I wait for the time to start right is that correct? My name is... You can start she'll shut the clock on once you start. All right excuse me my name is Bart Klein I'm the attorney for the petition in this case Jaspal Singh Uppal and I believe this case is before this court about whether or not the amended pleadings could be given effect that the immigration judge rejected and that the Board of Immigration Appeals rejected. What happened in this case was an en banc case and got remanded down on the issues of criminality whether you're removable on those issues and other issues like fraud. The remand by the Ninth Circuit and the remand by the Board of Immigration Appeals essentially made it like an open or not a restricted remand. The immigration judge on remand treated it like a new proceedings he allowed me to brief additional relief and I amended the pleadings based upon my interview with the client and in order to support the amended pleading which is that he was a wave through and a wave through means basically where someone sits in the car and the inspector looks at the person and waves them through. That was based upon a polygraph that I had him take. I also had him take a polygraph on whether the gave in an affidavit and the polygraph indicated that he was on February 1 at the border in Blaine and that's between Blaine and Surrey, Washington and instead of coming through sometime as entry without inspection in Douglas, Arizona which is what he pled to in 2006 and that's what the NTA of April 11th alleged and that's what he signed in an affidavit of April 12th. It basically was in direct contradiction what he testified before. The immigration judgment type of? So we said in Paris Magia that the concession that he made through his counsel at the June 14th 2006 hearing was binding and then rejected that there was any egregious circumstances defined in Santiago Rodriguez. Do you want to explain why the the court was wrong in saying that there were no egregious circumstances? Well it's basically I tried to explain to my briefs about the history about wave through. There was a case in 1980 called Arguellan that basically stated for the first time that a wave through was an omission and but counsel since that time, since I practiced then too, never even proper admissions like a wave through were just like EWIs, entries without inspection and it was not until basically this court in Longmore, it was defining another form of relief called 212H where it made the difference between procedurally correct admissions and merits correct type of admissions. So I read the case Quillanton, is that how you pronounce it? And it said that it was merely carrying forward the long-standing rule in Arguellan. So your argument is that as a practical matter Arguellan wasn't being followed? Is that your position? Yeah that's my position. That's why I couldn't basically state one of the there was ineffective assistance of counsel and basically even though he's been disbarred in the meantime I can't state based on my own practice of doing basically I don't know 1,500 individual hearings in court, 25,000 cases in my lifetime that he committed malpractice. I've been defense counsel on malpractice claims. So basically what I'm basically arguing is that it's basically like a kind of like a change of law. Like basically you've argued before the courts have held like in Hereta-Guerrero versus Ashcroft and I can't pronounce this, Mangione, McKenzie. Those are 2003 and 2008 cases where people have been able to quote change their pleas after they show that the crime wasn't a basically saying that in practice the change of plea should be accepted because basically of the way that that Arguellan was finally being enforced. In fact, it's only in June 2017 that the I-485 form, which is what you apply to get the adjustment of status, which is the relief I requested here, actually changed their form and under admission put waived through. So it took a really long time. It took 37 years for the board's decision to finally have any what I call practical effect in the form. What do I do about the contrary evidence in the record? There's two sworn statements. One that he entered the U.S. without inspection at Douglas, Arizona and then the second one in his affidavit in 2006 that he entered illegally without inspection through a farm field near Blaine, Washington. Right and that's what I remarked that his April 12, 2000 statement specifically states that. My response to that is just like the attorney saying that a person has an aggravated felon that later this court finds it's not an aggravated felon. Or the other case where they state that the counsel states it's a crime of moral turpitude and then through the categorical or the modified approaches that becomes not such a crime and not such a. I'm not understanding that because he said he came through a farm field even he has two different places. One was Douglas and one was Blaine, Washington and with respect to the Blaine, Washington statement he says he entered through a farm field. So that's not a wave-through that's going through a farm field. So you can't say that the attorney misunderstood that he had been allowed in and waved through at a regular place of entry. Right I'm not claiming the attorney committed malpractice. I'm just saying that the practical aspects of the 2010 when both Lum came out of the court and Quinn Lungton in 2010. What I'm basically stating is that this was made at a master calendar hearing. The hearing that was scheduled November 8th of 2012 was not an individual hearing. There was never a trial on this. I'm just arguing that based upon groups which basically said that you could present polygraph evidence as long as it was not in the motion to reopen before the board that my client be given an opportunity to explain both these statements and explain why he would pass a polygraph about actually being in a wave-through and any other evidence that normally an immigration judge would schedule a trial or individual hearing on. So I'm not saying that my client based upon his prior statements might be found to be incredible at a trial. I'm just saying I just want my opportunity to have a short trial for one hour which the judge could easily have done and to determine whether or not to accept after hearing my client's testimony and possibly other evidence of specifically the evidence of the polygraph tester which I've presented in court before and to determine whether or not an admission had been taken place or not. I just want to be clear because my time is ending is that the forms were submitted in time before the immigration judge and the fee was paid before the immigration judge made his final decision on November 13th. The fees were paid on November 9th. So in the end I'm basically asking that my client be given an opportunity to actually go to a trial or individual calendar hearing like to remand from both this Ninth Circuit, En Blanc, and the BIA indicated that any other evidence could be developed in support of the case. Thank you. Thanks. Your time's almost up but we'll let you to rebuttal argument for a minute after the government. I'm sorry I'm deaf in my right ear. I apologize. We'll let you do one minute of rebuttal. Thank you very much. After the government. Thank you. Good morning, Your Honors. Tiffany Walters for respondent, the United States Attorney General. The record in this case does not compel the conclusion that Mr. Uppel met his burden to demonstrate that he was inspected and admitted and thus is eligible to adjust his status for a second time to lawful permanent resident status. Is that really the issue? I thought we were looking at whether the court erred in saying that his concession at the June 14th 2006 hearing was binding. That is the central issue but that is going to the question of whether or not he was inspected and admitted and thus was eligible to adjust status. Here it centers around the question of the admission, whether or not he's bound by this prior admission that he entered without inspection. As Your Honor mentioned earlier, this is not the first time he's admitted that he entered without inspection. Over the years, he consistently maintained that that is how he entered. Admitting under penalty of perjury in his first adjustment of status application in 1999 that he entered without inspection at Douglas, Arizona. Then in a sworn statement stating to an immigration officer that he entered through the farm field and finally pleading in a distinct formal admission to a charging document that he entered without inspection in 2006. Now that he's seeking to readjust the status to lawful permanent resident again, his story about his entry has changed and the question here is whether or not the agency properly bound him to his admission made before the immigration judge that he in fact entered without inspection. The question is whether or not he's carried his burden to demonstrate egregious circumstances sufficient to warrant withdrawal of that admission. Here, Mr. Uppel has met none of the three requirements for withdrawing that admission. Those requirements require that he demonstrate that the admission was untrue or incorrect, that it would create an issue that is not the product of reasonable professional judgment by his attorney. And here, the case really centers on the factual issue. Was this admission untrue or incorrect? And Mr. Uppel has not demonstrated that the record compels that conclusion. Here we have an affidavit from him stating that he was inspected, but it's really a bare-bones affidavit that states in a conclusory manner that he was inspected. It doesn't explain the circumstances regarding this purported wave-through, what happened, or the conversations he had with his prior attorney that would explain why he admitted that he entered without inspection in 2006. And then he submitted the polygraph results, which this court has recognized in goal that there's no consensus on the reliability of that. The agency wasn't compelled to disregard the admission in light of polygraph results alone. Beyond that, there was no other corroborating evidence. There wasn't statements from the driver of the car that he was purportedly entered with or any other form of corroborating evidence beyond this bare-bones statement and a polygraph, and that's it. And under those circumstances, the record doesn't compel the conclusion that he met his burden to establish that it was, in fact, untrue and correct, and so that he should have been able to withdraw that admission. So opposing counsel focuses more, I think, on the result was unjust because of a change in the law. And although he acknowledges that the law didn't change on the books, it changed as a practical matter. What's your response to that? I don't believe there's support for the proposition that the law has changed. Arag-e-Yin was decided in 1980. In the case that opposing counsel cites, Yin Hing Sum, the court recognized in footnote 7 that the board had continued to apply matter of Arag-e-Yin even after the 1996 change in the law regarding the statutory definition of admission. And it actually cites two unpublished cases from the board from 2004 and 2007, showing that the board was applying this long-standing rule that it's applied since really the 1940s, which is what matter of Arag-e-Yin relied on two cases from that long ago. It's one of the rare areas in immigration law where there's actually not been a lot of changes over the years. I mean, there may have been arguments floating around as to the impact of the 1996 laws. There was a case that this court decided in 2010, Orozco, that dealt with the issue, but it was vacated within six months of it issuing, and that was a 2008 decision. So that postdated the 2006 pleadings and had no impact on the decision in 2006. There's just nothing to support in case law that that was the correct interpretation of the law at the time, that for whatever reason, the binding board precedent had no legal impact. So I don't think there is an intervening change in the law that would justify warranting him to withdraw the admission at this point in time. Counsel, if I could interject a question. Just assuming for argument's sake that we were to you should be able to withdraw the admission, what's the government's position on the significance of the polygraph? Well, the agency considered it and found it unreliable, such that it would affect the judicial admission. I think weighing the evidence is ultimately a factual determination. So if we took out the admission, I'm not sure that I could speak for what the agency would ultimately determine as a factual matter in weighing the evidence. But even without the admission, you have the inconsistent statements. Has the agency published a formal presidential decision on the significance of polygraph? No, it hasn't. The board relied on discourse decision and goal, which dealt with it in the context of a motion to reopen. But it recognized that there is no consensus on the reliability. And in this case, it's really a weighing of the evidence between the judicial admission and the inconsistent statements and the lack of corroborating evidence. And in light of all of that, the agency concluded that there wasn't sufficient evidence to show that the admission was untrue or incorrect, such that it should be withdrawn. Okay. Thank you. And finally, as to the unreasonable professional judgment, that third prong, there has not been an effective assistance of counsel raised below or in the brief. As I understand it, Mr. Epple's position was that it was reasonable in light of his interpretation of law at the time. So without that, we don't have evidence that would suggest that he should be able to withdraw the plea for that reason as well. If there are no further questions, because the record does not compel the conclusion that Mr. Epple met his burden to show that he was, in fact, inspected and admitted and that his judicial admission was untrue or incorrect, the court should deny the petition for review. Okay. Thank you. The court will take a recess for a few minutes. We're just recessing because Judge Fruedenthal needed to step out for a minute. But we'll pause because although the government concluded argument, I had told Petitioner's counsel that he would get a minute for rebuttal, so we'll wait and see.  Okay. OKay. I guess to wait for her just conclude the remaining minutes. We don't usually have these cliffhanger situations. I think, under the circumstances, what we'll do is we'll permit the rebuttal argument to proceed with Judge Aikuda and I. Okay, we are all now assembled. Mr. Klein, please give us your rebuttal. Yes, in rebuttal, I would just like to state that my client is just requesting that he be given the opportunity to explain during trial on remand as it was allowed, as was recognized. On page 414 of the certified record, it's dated March 27, 2012, for a master calendar hearing on November 8th. And what happened is that he made his substantive decision on October 31st and stating that petitioner through this council could make a request for voluntary departure. And at the November 8th master calendar hearing, I withdrew the request for voluntary departure. And just since the judge had ruled that there is still an EWI as the mode of entry into the United States, that my client wasn't eligible for any other kinds of relief other than adjustment of status. At that time, I submitted the waiver and adjustment of status. And the next day, the fee was issued and on the 13th, the decision was made. So we're just asking that we be given the opportunity to go to trial and document the way through it. Thank you very much. Okay, thank you very much, counsel. I want to thank both counsel for the excellent arguments. And again, I'm going to thank Judge Rudenthal for visiting with us. That concludes our arguments for today. We do have four cases submitted on briefs, and I'll mention them. Morales v. Sessions is submitted on the briefs. I think that's number 1570134. United States v. Ortiz-Calderon is submitted on the briefs. I think that's number 1730064. Oh, 30044. And then Delivery Express v. Sachs, number 1635543 is submitted on the briefs. And finally, Dietz v. Geico General Insurance is submitted on the briefs. And that's 17-35011. I think my eyesight must be getting worse, so I'll have to get a better system for reading those numbers. But thank you again, counsel. We appreciate it. And the Court will now adjourn until tomorrow. All rise.
judges: Gould, Ikuta, Freudenthal